642 A.2d 1132

**COMMONWEALTH of Pennsylvania**

v.

**Douglas A. GIBBS, Appellant.**

Superior Court of Pennsylvania.

Argued May 10, 1994.

Filed June 13, 1994.

---

Alexander H. Lindsay, Jr., Butler, for appellant.

William M. Panella, Dist. Atty., New Castle, for Com., appellee (Submitted).

Before TAMILIA, HUDOCK and HESTER, JJ.

HESTER, Judge:

Douglas A. Gibbs appeals from the judgment of sentence entered in the Court of Common Pleas of Lawrence County on November 10, 1993, following his conviction by a jury of statutory rape, aggravated indecent assault, and involuntary deviate sexual intercourse. He was sentenced to a term of imprisonment of five to ten years and directed to pay the costs associated with his prosecution. For the reasons set forth below, we reverse the judgment of sentence and remand the case for a new trial.

When viewed in the light most favorable to the Commonwealth, the record reveals the following facts. In mid-April, 1992, shortly after her eleventh birthday, A.H. visited appellant's New Castle home. During the course of that visit, appellant, a cousin of A.H.'s father, forcibly kissed the girl. In

the six months that followed, appellant came into contact with A.H. on numerous occasions, and his conduct escalated to include digital vaginal penetration, fellatio, and intercourse. Throughout the various episodes of abuse, appellant warned A.H. to remain silent regarding their occurrence. Despite that admonition, A.H. confided in appellant's daughters, and her mother eventually learned of appellant's activities.

On November 3, 1993, in response to an unspecified abuse report, New Castle Police Officer David Kelty drove to the H. family residence and questioned both A.H. and her mother. Later that day, after the officer interviewed A.H. in the presence of Lisa Matteo, a caseworker for Lawrence County Children and Youth Services, appellant was arrested and charged with rape, statutory rape, aggravated indecent assault, and involuntary deviate sexual intercourse. Several months thereafter, trial on the matter commenced.

On March 19, 1993, a jury acquitted appellant of rape, but convicted him of the three remaining charges. Appellant subsequently filed unsuccessful post-verdict motions, which, among other things, challenged the propriety of a trial court decision to deny him access to documents pertaining to statements made by A.H. to Ms. Matteo. On November 10, 1993, the court imposed the described sentence. This timely appeal followed.

Appellant asserts that the trial court erroneously refused him access to records of Ms. Matteo's interviews with A.H. on the basis of the privilege relating to confidential communications made to sexual assault counselors. Preliminarily, we note that the sexual assault counselor privilege is set forth in 42 Pa.C.S. § 5945.1. In part, that section provides:

> **(a) Definitions.**—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:
>
> . . . .
>
> **"Rape crisis center."** Any office, institution or center offering assistance to victims of sexual abuse and their

families through crisis intervention, medical and legal accompaniment and follow-up counseling.

"**Sexual assault counselor.**" A person who is engaged in any office, institution or center defined as a rape crisis center under this section, who has undergone 40 hours of sexual assault training and is under the control of a direct services supervisor of a rape crisis center, whose primary purpose is the rendering of advice, counseling or assistance to victims of sexual assault.

"**Victim.**" A person who consults a sexual assault counselor for the purpose of securing advice, counseling or assistance concerning a mental, physical or emotional condition caused or reasonably believed to be caused by a sexual assault. The term shall also include those persons who have a significant relationship with a victim of sexual assault and who seek advice, counseling or assistance from a sexual assault counselor concerning a mental, physical or emotional condition caused or reasonably believed to be caused by a sexual assault of a victim.

"**Confidential communication.**" All information, oral or written, transmitted between a victim of sexual assault and a sexual assault counselor in the course of their relationship, including, but not limited to, any advice, reports, statical data, memoranda, working papers, records or the like, given or made during that relationship.

**(b) Privilege.—**

(1) No sexual assault counselor may, without the written consent of the victim, disclose the victim's confidential oral or written communications to the counselor nor consent to be examined in any court or criminal proceeding.

42 Pa.C.S. § 5945.1.

As a reading of the statutory provision demonstrates, the privilege in question prevents sexual assault counselors from disclosing confidential communications made to them by the victims of sex-related crimes. The privilege, which is the equivalent of one involving private psychotherapeutic treatment, is absolute and applies both to oral commu-

nications and to records created during the course of the confidential relationship. *See Commonwealth v. Wilson,* 529 Pa. 268, 602 A.2d 1290 (1992); *see also Commonwealth v. Eck,* 413 Pa.Super. 538, 605 A.2d 1248 (1992); *Commonwealth v. Kennedy,* 413 Pa.Super. 95, 604 A.2d 1036 (1992). Keeping these principles in mind, we turn to appellant's claims regarding the propriety of its application.

■ Appellant implies that the privilege could not be utilized to bar his access to the sought-after documents since the record fails to demonstrate that Ms. Matteo fits within the statutory definition of a sexual assault counselor. However, as our review of the record reveals that appellant failed to raise this issue at trial, we find it waived. *See Commonwealth v. Sanchez,* 416 Pa.Super. 160, 610 A.2d 1020 (1992) (failure to raise issue, argument or objection in timely manner at trial results in waiver). Accordingly, we decline to consider its merits.

■ Appellant also contends that the trial court's refusal to grant him access to the documents in question denied him his rights of confrontation and due process under the Pennsylvania Constitution since the Commonwealth utilized Ms. Matteo to testify to statements made by A.H. The Commonwealth, however, responds by asserting that appellant waived this contention, which is one of first impression, by failing to interpose a timely objection to Ms. Matteo's testimony. We find the Commonwealth's allegation of waiver unconvincing. Although appellant's claim is premised upon the assertion that Ms. Matteo breached the privilege by testifying for the Commonwealth, it does not concern the propriety of her testimony's admission. Rather, the issue raised by appellant relates to whether the admission of Ms. Matteo's testimony had the *effect* of entitling him to examine the records in question. Thus, even if we assumed that appellant possessed the necessary standing to assert an objection on the basis of privilege, we would find that his failure to do so has no impact upon the matter presently before us, which was raised and exhaustively

discussed at trial. *See* Notes of Testimony ("N.T."), at 68–72, 74–76.

■ We now address the merits. As mentioned previously, the sexual assault counselor privilege is absolute and prevents the disclosure of certain information related by victims of sexual assault. In light of the absolute nature of the privilege, it necessarily precludes the revelation of protected information both to the Commonwealth and to the defense. Moreover, as the statute indicates that no disclosure of confidential information may be made without the written consent of the victim, a victim's testimony regarding the facts underlying a sexual assault may not effectuate even a limited waiver of the privilege.[1] Utilizing these principles, we turn to the question of whether Ms. Matteo's testimony amounted to a violation of the privilege.

■ In the present case, the Commonwealth utilized Ms. Matteo to testify to statements made to her by A.H. regarding appellant's abusive conduct. In addition, we note that our review of the record demonstrates that Ms. Matteo's status as a sexual assault counselor was not contested in the trial court. Moreover, the type of information elicited from Ms. Matteo, which concerned A.H.'s descriptions of the abuse suffered at appellant's hands, clearly falls within the scope of the privilege's protection. Thus, as the privilege applies irrespective of whether the party seeking disclosure is the Commonwealth or the defense, and there is no claim that either A.H. or her parents provided the necessary written waiver, we find that the Commonwealth instigated a breach of the privilege by utilizing Ms. Matteo as a witness.

■ Having determined that the privilege was breached by Ms. Matteo's testimony, we turn to the question of the effect of that breach. Under ordinary circumstances, a criminal defendant's confrontation and compulsory process rights un-

1. Despite the clear language of the statute to the contrary, both the Commonwealth and the trial court apparently assert that a victim's testimony regarding the facts underlying an assault waives the privilege with respect to all information consistent with that testimony while protecting the confidentiality of any inconsistent facts.

der the Pennsylvania Constitution must yield to the privilege created by 42 Pa.C.S. § 5945.1. *See Commonwealth v. Wilson, supra.* The rationale underlying this conclusion is that the legislature, by enacting that provision, has acknowledged the significance of the interest which it addresses and decided to afford that interest protection. *Id.* The circumstances at issue in the present case, however, are far different from those normally considered. Unlike the ordinary case, which generally involves a simple request for access to information, *see id.* (request for records of sexual assault counselor), the present case also concerns a breach of the confidentiality interest protected by the statute. In light of that breach, the rationale for affording the confidentiality interest the impregnable protection unquestionably intended by the legislature is diminished substantially. This diminishment removes the confidentiality interest embodied in the statute from its position of absolute primacy, thus rendering the privilege more akin to one extant at common law, which our Supreme Court has held must yield to a defendant's rights of confrontation and compulsory process.[2] *See Commonwealth v. Lloyd,* 523 Pa. 427, 567 A.2d 1357 (1989) (dealing with right of access to psychiatric records under common law privilege). However, recognizing that the confidentiality interest still exists in cases involving common law privileges, the Court has limited access in such situations to *in camera* review. *Id.* Accordingly, as we conclude that the trial court denied appellant his rights of

---

**2.** This conclusion is consistent with a statement made by Judge Ford Elliott in her concurring opinion in *Commonwealth v. Hyatt,* 401 Pa.Super. 14, 584 A.2d 956 (1990), *rev'd,* 533 Pa. 56, 617 A.2d 1271 (1993) (*per curiam*), a case in which we held that the sexual assault counselor privilege was inapplicable to protect documents from disclosure. Judge Ford Elliott noted that the majority's conclusion was dictated by prior precedent. However, anticipating the Supreme Court's decision in *Commonwealth v. Wilson, supra,* she concluded that it both was absurd and rendered the privilege nugatory. In addition, Judge Ford Elliott foresaw the matter presently at issue and stated, "In the event that a counselor would reveal confidential information to a prosecutor or in any active way use the relationship with the alleged victim to further the aims of the prosecution, then the privilege is breached and the defendant is entitled to take advantage of that breach." *Commonwealth v. Hyatt, supra,* 401 Pa.Super. at 25 n. 1, 584 A.2d at 962 n. 1.

confrontation and compulsory process by denying him all access to Ms. Matteo's records, we are constrained to reverse the judgment of sentence and remand the case for a new trial.[3]

Judgment of sentence reversed. Case remanded for a new trial. Jurisdiction relinquished.

---

**3.** In light of our disposition of this issue, we need not consider appellant's two remaining claims. These claims concern the impact of a Commonwealth discovery violation and the propriety of the trial court's decision to exclude evidence allegedly relating to A.H.'s prior sexual conduct.